IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:25-cv-00141-MEO

| | |
|---|---|
| CALVIN JEROME WOMIC, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| ) | |
| CHRIS POSTELL, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 20], Plaintiff's untimely second response thereto [Doc. 27], and Plaintiff's unauthorized surreply [Doc. 28].

**I.  PROCEDURAL BACKGROUND.**

On February 26, 2025, Pro Se Plaintiff Calvin Jerome Womic, Jr., ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights arising out of an incident while he was detained at the Gaston County Jail (the "Jail") in Gastonia, North Carolina. [Doc. 1]. Plaintiff named Sergeant FNU Reese, Sergeant J.M. Heffner, Deputy FNU Postell, and Gaston County Sheriff Chad E. Hawkins as Defendants. [Id. at 2-3].

Plaintiff alleged that, on October 29, 2024, Defendant Postell shot Plaintiff's hands with pepper balls while Plaintiff was "subdued" in handcuffs. [Id. at 5]. Plaintiff further alleged that Defendants Heffner and Reese "allowed" the use of excessive force in their presence and that, when Plaintiff's hands were uncuffed, "[illegible] [were] twisted & bent in not possible ways to try & go behind [his] back." [Id.]. Plaintiff's unverified Complaint survived initial review on

Plaintiff's Fourteenth Amendment excessive force claim against Defendant Postell based on the use of pepper balls. [Doc. 8]. The remaining claims and Defendants were dismissed in accordance with the Court's Order. [Id.].

On October 31, 2025, Defendant Postell moved for summary judgment. [Doc. 20]. He argues that summary judgment should be granted because there was no excessive force as a matter of law and because he is entitled to qualified immunity. [Doc. 21]. In support of his summary judgment motion, Defendant submitted a brief, his own Declaration, and body worn camera (BWC) footage of the incident, which will be cited herein as "BWC." [Doc. 20 at 5-11; Doc. 21; see 11/3/2025 (Court Only) Docket Entry].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 22]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. at 2 (citing Fed. R. Civ. P. 56(c)(1)(A))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3 (citing Fed. R. Civ. P. 56(c)(4))].

2

Plaintiff timely filed an unsworn, three-page response to Defendant's motion [Doc. 24] and Defendant replied [Doc. 25]. Thereafter, Plaintiff filed an untimely second response to Defendant's summary judgment motion and an unauthorized surreply, neither of which were verified and both of which will be stricken from the record in this matter as improper. [See Docs. 27, 28].

As noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, the Defendant's is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3.

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

4

Scott, 550 U.S. at 380.  To be sure, "at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video 'blatantly' contradicts the nonmovant's position." Simmons v. Whitaker, 106 F.4th 379, 385 (4th Cir. 2024) (citing Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008)).

### III. FACTUAL BACKGROUND

Defendant's uncontroverted forecast of evidence shows the following.

Defendant Postell has been a Gaston County Deputy Sheriff since 2004. [Doc. 20 at ¶ 2: Postell Dec.].  On the afternoon of October 29, 2024, he was on-duty and assigned to the Sheriff's Sex Offender Registry and Fugitive Unit.  Late that afternoon, he was asked by a supervisor to provide security for deputies and detention officers conducting searches of A-Block inmates and their cells. Defendant Postell left his office and obtained a PepperBall launcher from its locker on the way to the A-Block dayroom.  [Id.].  A PepperBall launcher is a semi-automatic weapon that uses compressed air to propel ball-shaped projectiles containing a synthetic irritant toward the lower half of the human target.  The projectiles are designed to hit their target with force and create a cloud of irritant on impact.  Defendant Postell has been trained to operate a PepperBall launcher since 2020 and became a certified instructor in August 2024.  [Id. at ¶ 8].  Because he had been working in the office, Defendant Postell was not equipped with a BWC.  [Id. at ¶ 2].

As part of the search process, inmates were escorted to the booking area where they were scanned one-by-one with body imaging to detect weapons and other contraband.  After these scans, each inmate was escorted back to his cell, which had been searched in his absence.  [Id. at ¶ 3].

During this process, Sergeant Joseph Heffner told Defendant Postell that while the Plaintiff was in the booking area for his body scan, he said he wanted someone to take off his handcuffs because he was going to "get" an officer.  Sergeant Heffner told Defendant Postell that after

Heffner escorted Plaintiff and his cellmate, Marshon Sanders, back to their cell Heffner instructed Sanders to turn around and face away for the removal of his handcuffs and that Sanders fully complied. Heffner told Defendant Postell that Plaintiff refused the same instruction and, instead, verbally threatened Heffner with physical harm. In response, Heffner radioed the control station to close the cell door and conveyed Plaintiff's threats to Captain Patrick Hagins. [Id. at ¶ 4].

As Defendant Postell approached Plaintiff's cell, Postell could see the Plaintiff and Sanders through the door's window. Sergeant Heffner loudly ordered Plaintiff to move to the door's "trap," which is a portal through which food and other items are delivered and removed without having to open the cell door. [Id. at ¶ 5]. Sergeant Heffner repeatedly ordered Plaintiff to place his handcuffed wrists through the trap so that Plaintiff's handcuffs could be unlocked and removed. Plaintiff refused and instead walked over and kicked the cell door. [Id.].

When Defendant Postell looked inside the cell, he saw that Plaintiff had maneuvered his handcuffs from behind his back to his frontside. Defendant Postell knew from his training and experience that inmates can aggressively attack law enforcement officers even when handcuffed behind their backs through kicking and head-butting. When cuffed in front, inmates have even more attack options because their hands may be used to grab, choke, punch, or swing the metal cuffs as a weapon. [Id.].

Defendant Postell gathered that Plaintiff would likely need to be forcibly removed from his cell to allow for removal of the handcuffs. Leaving them in place would pose a serious safety concern for the Plaintiff and possibly his cellmate. [Id. at ¶ 6]. Defendant Postell knew that physically entering the cell of a noncompliant inmate, who was already charged with resisting law enforcement and who had just verbally threatened jail staff, carried an additional safety threat. Defendant Postell also knew that sometimes inmates defy orders "for the fun of it" while others

6

have "more nefarious plans." [Id.]. Defendant Postell also knew that the likelihood of a violent physical encounter with a recalcitrant inmate is substantially higher where, like the Plaintiff, their behavioral history already demonstrates a contempt for authority. [Id.].

In such situations, the use of projectiles from a PepperBall launcher or an eXact iMpact 40 mm Sponge Round is the optimal use of force option to gain compliance and avoid a physical altercation within the close confines of a cell. [Id. at ¶ 7]. PepperBall rounds deliver ten-to-15-foot pounds of kinetic energy to the body, while the 40 mm rounds deliver around 120-foot pounds of kinetic energy. As noted, Defendant Postell was armed with a PepperBall launcher. Deputy Matt Williams, who was standing next to Postell, was armed with a sponge round launcher. Because the PepperBall rounds are less likely to cause injury beyond temporary discomfort, Defendant Postell and Williams, who were both wearing gas masks, agreed that Postell would deliver PepperBall rounds if deployment were necessary, and Williams would hold off. [Id.]. In Defendant Postell's experience, the sting from impact of a PepperBall combined with immediate release of the irritant almost always immediately overcomes an inmate's resistance or aggression, resulting in quick and safe physical control over the inmate. [Id. at ¶ 8].

Around this time, Defendant Postell was joined by Deputy Matt Erwin, who was wearing the BWC that captured much of the following events. [Id. at ¶ 9]. Deputy Will Gulledge, who was also present, approached the cell door and began shouting at Plaintiff and Sanders to "get on the ground." [Id.; BWC]. Plaintiff approached the glass and claimed he could not hear what Gulledge was saying, although Sanders, who was on the far side of the cell, appeared to comply and dropped to the floor. Gulledge continued to order Plaintiff to the ground and warned him that he would be hit by PepperBalls if he refused to comply. After Plaintiff questioned who was armed with PepperBalls, Gulledge pointed back toward Defendant Postell and Williams and said, "They

7

do. Get on the ground." [Id. at ¶ 9; BWC].

The standoff continued as Plaintiff moved toward the back wall of the cell with his handcuffed wrists straight out in front of him. [Id. at ¶ 10; see BWC]. As the cell door was opened by the control booth, Defendant Postell and other deputies continued ordering Plaintiff to "get on the ground." [Id. at ¶ 11; BWC]. At this time, Sanders was face down on the floor next to Plaintiff, while Plaintiff remained standing looking back at the deputies. [Id.]. Not knowing Plaintiff's intent and not wanting to give him an opportunity to charge at the deputies through the now open door, Defendant Postell deployed eight to ten PepperBall projectiles in rapid succession towards Plaintiff's lower back and buttocks area. [Id.]. Surprisingly, Plaintiff absorbed the projectiles and remained standing. [Id.].

As Plaintiff remained standing, at least four deputies continued to command Plaintiff to "get on the ground." [Id. at ¶ 12; BWC]. After approximately 30 seconds, the cell door inexplicably closed for a few seconds. When it reopened, Defendant Postell saw that Plaintiff was finally face down in his cell. Other deputies ordered Sanders to exit the cell. Sanders, however, remained in the cell, possibly due to the chemical irritant, which is very powerful. Deputies entered the cell and pulled Sanders out without incident. [Id.].

Deputies then ordered Plaintiff to crawl out of the cell himself, but he did not move. After handing his PepperBall launcher to another deputy, Defendant Postell entered Plaintiff's cell with Deputy Erwin to physically remove the Plaintiff. On reaching the Plaintiff, Defendant Postell placed his right knee on the middle of Plaintiff's back to prevent him from getting up. Defendant Postell then removed the handcuff from Plaintiff's left hand, which was in front of him, with the intention of re-cuffing the Plaintiff behind his back before removing Plaintiff from his cell. In response, Plaintiff locked his hands together and tightly interlaced his fingers. [Id. at ¶ 13; BWC].

When ordered to unlock his hands, Plaintiff responded, "I can't. I fear for my life." [BWC]. Plaintiff was so strong and insistent that it took Defendant Postell and Deputy Erwin approximately 45 seconds to physically pry Plaintiff's hands apart by peeling back his individual fingers. [Doc. 20 at ¶ 13; BWC].

Once Plaintiff's hands were secure, Defendant Postell rolled Plaintiff onto his left side and instructed him to bring his knee to his chest so that they could stand him up. Plaintiff refused, so they grabbed Plaintiff's jumpsuit and pulled him backwards out of his cell and placed him in a restraint chair. Other staff wheeled Plaintiff from the cell block. [Id. at ¶ 14; BWC].

## IV. DISCUSSION

Claims of excessive force against a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction the use of excessive force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 394-95 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. at 397. The calculus of reasonableness includes consideration of "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).

The forecast of evidence here plainly shows that the Plaintiff threatened staff during the inmate searches and had a history of recalcitrant behavior, that he refused commands to place his hands through the trap for his handcuffs to be removed, that he refused commands to get on the floor before and after his cell door was opened despite warnings that pepper balls would be employed, and that after Plaintiff's threatening behavior and repeated and protracted refusal to follow commands to allow the deputies to remove his handcuffs, Defendant Postell used force to gain Plaintiff's compliance.

The forecast of evidence further shows that Defendant Postell and Deputy Williams proactively agreed to gain Plaintiff's compliance, if necessary, through the deployment of pepper balls because they delivered a lesser amount of force while still generally effective to overcome resistance. Finally, the forecast of evidence shows that even after Defendant Postell deployed pepper balls, Plaintiff remained standing, undeterred in his refusal to get on the ground, and that when he finally went to the ground refused to follow commands to unlock his hands.

From this forecast, no reasonable jury could conclude that the force used by Defendant Postell to gain Plaintiff's compliance to remove his handcuffs was objectively unreasonable. Rather, a reasonable jury would conclude that the amount of force used was proportional to the need for the use of force, that Defendant Postell attempted to and did temper the amount of force used to gain Plaintiff's compliance, that the security problem posed by Plaintiff was sufficiently serious to warrant the use of force, that Defendant Postell reasonably perceived the threat posed by Plaintiff, that Plaintiff protractedly refused commands and resisted the efforts of the Defendant and the other deputies to gain Plaintiff's compliance before force was used, and that Plaintiff's undeterred defiance was further evidenced by his behavior after the pepper ball deployment. Moreover, Plaintiff has forecast no evidence of any injury from the use of force.

As such, there is no forecast of evidence from which a reasonable jury could conclude that Plaintiff's due process rights were violated. Because there is no genuine issue for trial, the Court will dismiss Plaintiff's claim. Moreover, because the forecast of evidence does not support that a constitutional right was violated, Defendant would also be protected by qualified immunity. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

For the reasons stated herein, the Court will grant Defendant's motion for summary judgment.

### O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 20] is **GRANTED**, and this action is hereby **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's second Response [Doc. 27] and Surreply [Doc. 28] are hereby **STRICKEN** from the record in this matter.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.
Signed: January 14, 2026



Matthew E. Orso
United States District Judge